**LUBEN INDUSTRIES, INC.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

No. 81–5877.

United States Court of Appeals,
Ninth Circuit.

Argued Nov. 3, 1982.

Submitted Feb. 16, 1983.

Decided June 7, 1983.

Michael Blumenfeld, Fierstein & Sturman, Los Angeles, Cal., for plaintiff-appellant.

Gayle P. Miller, Washington, D.C., for defendant-appellee.

Before FLETCHER and NELSON, Circuit Judges, and EAST,* District Judge.

EAST, Senior District Judge:

In the District Court, Luben Industries, Inc. (Luben) sought to recover a refund of allegedly unlawfully assessed and collected Federal excise taxes. The Government in turn counterclaimed for allegedly lawfully assessed but unpaid excise taxes. The parties filed cross-motions for summary judgments. The District Court denied Luben's motion, granted the Government's motion, and entered its final judgment on July 30, 1981. Luben appeals. We note jurisdiction under 28 U.S.C. § 1291 and affirm.

Luben manufactured and sold accessories (roll bars, push bars and brush guards) for light-duty (½ to ¾ ton) pickup trucks. Luben considered the manufacture and sale of these accessories as *not* being subject to the manufacturer's excise tax imposed by I.R.C. § 4061 (1976).[1] On audit, the Internal Revenue Service (IRS) determined that Luben's sales were subject to the tax. The IRS assessed deficiencies for the period of the fourth quarter of 1975 through the second quarter of 1977. Luben paid the taxes for the fourth quarter of 1975 (approximately $1,000), but did not pay the taxes for the other quarters (approximately $70,000). This action to obtain a refund of the taxes paid and the Government's counterclaim for the unpaid taxes from the other quarters ensued.

While this suit was pending in the District Court, another District Court issued an

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. I.R.C. § 4061 is composed of four parts. Section 4061(a)(1) *imposes* a 10% manufacturer's excise tax on all truck bodies and chassis (including parts and accessories sold on or with the truck). Section 4061(a)(2) *exempts* from this tax sales of light-duty pickup trucks (and parts sold on or with the truck). Section 4061(b)(1) *imposes* an 8% tax on a part or accessory for a truck if it is sold in a separate transaction. Finally, § 4061(b)(2) *exempts* from the 8% tax sales of parts and accessories suitable for use on a "passenger automobile." The code section does not provide a definition of the term "passenger automobile."

interlocutory memorandum in *Bristol Corp., dba Fey Mfg. Corp. v. United States,* No. CV–78–1759 FW (C.D.Cal. May 22, 1980), reversed and remanded, 714 F.2d 151 (9th Cir.1982). *Bristol* involved the same question as is present here: whether sales of accessories for light-duty pickup trucks sold after the sale of the trucks are exempt from the excise tax by the "passenger automobile" exemption. In the interlocutory memorandum, the District Court found that light-duty trucks are included within the meaning of "passenger automobiles," and ruled that sales of light-duty truck accessories were exempt. However, because the *Bristol* case involved a bifurcated trial, a second issue was not decided, and thus a final judgment was not entered until months after the decision was issued by the District Court in this case. *Bristol* is currently on appeal before this Circuit.

Following the issuance of the interlocutory memorandum in *Bristol,* Luben, in support of its motion for summary judgment, contended that the *Bristol* interlocutory memorandum collaterally estopped the Government from relitigating the question of whether light-duty pickup trucks are included within the passenger automobile tax exemption. The Government countered with the argument that the interlocutory memorandum did not raise a collateral estoppel and that as a matter of law light-duty pickups are not passenger automobiles.

## DISCUSSION

I. *Did the District Court err when it refused to give collateral estoppel effect to the Bristol interlocutory memorandum?*

Luben was not a party in *Bristol.* However, the issue litigated in *Bristol,* the scope of the "passenger automobile" exemption under § 4061(b)(2), is identical to the issue involved here.

■ Collateral estoppel, also termed issue preclusion, generally applies when an issue finally decided in an earlier action is involved in a second action, and the parties involved in the second action are bound by the first decision.[2] Until a few years ago, the parties to the second action must have been parties to the first action, or have been subject to the binding effect or benefit of the first action. However, the Supreme Court has abandoned this traditional rule of mutuality. In *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331–33, 99 S.Ct. 645, 651–53, 58 L.Ed.2d 552 (1979), the Supreme Court stated that a defendant who has a full and fair opportunity to litigate an issue in one action may be precluded from defending itself on the same issue in another action brought by a different party. However, the Supreme Court provided the District Court with broad discretion to deny the application of offensive collateral estoppel where "the application of offensive estoppel would be unfair to a defendant." *Id.* at 331, 99 S.Ct. at 652.

The Government raises two objections to the application of collateral estoppel here. First, the Government argues that the *Bristol* interlocutory memorandum was not sufficiently final for collateral estoppel purposes. Second, the appellees contend that it would be unfair to apply collateral estoppel offensively against the Government in this case.

---

**2.** Traditionally, collateral estoppel applied only to issues that involve determinations of fact, and did not apply to pure questions of law. *See United States v. Moser,* 266 U.S. 236, 242, 45 S.Ct. 66, 67, 69 L.Ed. 262 (1924). The court in *Divine v. Commissioner,* 500 F.2d 1041, 1049–50 (2d Cir.1974), followed this rule in holding that the IRS was not collaterally estopped from relitigating in the Second Circuit a question that it had lost on identical facts in the Seventh Circuit. The court in *Divine* pointed to the absurdity of the situation that would arise if a decision in one circuit, not reviewed by the Supreme Court on certiorari, could fore-

close all other circuits from independently determining the merits of the issue. *Id.* at 1049.

*Divine* would not prevent the application of collateral estoppel in this case. In *Starker v. United States,* 602 F.2d 1341, 1348 n. 5 (9th Cir.1979), we stated that "[t]o the extent that it survives *Parklane Hosiery v. Shore* ..., we think *Divine* has no applicability to cases arising within the same circuit." Since both *Bristol* and the present case have arisen in this circuit, collateral estoppel may be applied if otherwise appropriate even though a pure question of law is involved.

■ To be "final" for collateral estoppel purposes, a decision need not possess "finality" in the sense of 28 U.S.C. § 1291. A "final judgment" for purposes of collateral estoppel can be any prior adjudication of an issue in another action that is determined to be "sufficiently firm" to be accorded conclusive effect. *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir.1979); Restatement (Second) of Judgments § 13 (1982). Comment "g" to § 13 of the Restatement discusses factors that are relevant to the determination of "firmness":

> [P]reclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, *that the decision was subject to appeal or was in fact reviewed on appeal,* are factors supporting the conclusion that the decision is final for purpose of preclusion.

(Emphasis supplied.)

■ The District Court in the present case stated that the *Bristol* interlocutory opinion should not be given preclusive effect because "[a]s an interlocutory order it is subject to free revision by the court on its own motion or on motion of any party at any time before judgment." Furthermore, although the *Bristol* opinion does not appear to be tentative, it could not have been the subject of an appeal at the time the instant case was decided in the District Court. We are satisfied that the District Court acted well within its discretion in determining the *Bristol* memorandum was not sufficiently firm to give it collateral estoppel effect.

Moreover, we are convinced that the Government did not have a "full and fair opportunity to litigate" its claim because it could not appeal the interlocutory memorandum in *Bristol*. Thus, we conclude that the District Court did not abuse its discretion in rejecting the application of the doctrine of collateral estoppel against the Government on the issue.

II. *Does the excise tax exemption for "passenger automobile" accessories contained in § 4061(b)(2) include parts and accessories for light-duty pickup trucks?*

Luben argues that we should reach the same result as the District Court reached in *Bristol:* that the passenger automobile tax exemption includes light-duty pickup truck parts. We reject the invitation as neither the language of the statute, the legislative history of the statutory section, the committee reports which discuss the section, nor the rules of statutory construction offer support for the argument.

The language of the statute does not shed much light on whether light-duty pickup truck parts are included in the passenger automobile parts exemption. Section 4061(a) first imposes a 10% tax on truck bodies (and parts sold in connection with the truck), and then specifically exempts light-duty pickup trucks (and parts sold in connection with the truck) from the tax. Section 4061(b) imposes an 8% tax on parts and accessories (sold subsequently to the sale of the truck) for items listed in subsection (a), and then exempts parts and accessories suitable for use on passenger automobiles from the 8% tax. The statute does not define the term "passenger automobile." Thus, the statute by itself does not offer unambiguous support for Luben's position.

The history of § 4061 does support the Government's argument that light-duty pickups are not passenger automobiles for purposes of the § 4061(b)(2) exemption. Prior to 1965, Congress imposed an excise tax on all automobiles and trucks, as well as parts and accessories for both automobiles and trucks. In 1965, Congress narrowed the excise tax by phasing out the excise tax on automobiles and their parts. Subsection (a)(1) was amended to impose an excise tax on only truck bodies and their parts, while subsection (a)(2) phased out the tax on automobiles. Pub.L. No. 89–44, title II, § 201, 79 Stat. 136 (1965). Subsection (b)(1) was amended to impose an excise tax on parts and accessories for (a)(1) vehicles (i.e., trucks), while subsection (b)(2) repealed the

tax on parts and accessories for (a)(2) vehicles (i.e., automobiles). 79 Stat. 137.

In 1971, Congress amended § 4061 to its present form. Subsection (a)(2) was amended to exempt from the (a)(1) excise tax light-duty pickup trucks and parts sold in connection with the truck. Pub.L. No. 92–178, title IV, 85 Stat. 530 (1971). Had Congress intended in 1971 to also exempt from excise taxes parts and accessories which were sold after the purchase of the pickup truck, Congress could have done so by leaving subsection (b)(2) untouched; the cross-reference in (b)(2) to (a)(2) vehicles would have exempted parts and accessories for light-duty pickup trucks (i.e., (a)(2) vehicles). However, Congress did amend subsection (b)(2) by deleting the cross-reference to subsection (a)(2) vehicles and inserting "passenger automobiles." 85 Stat. 533. Thus, instead of exempting parts and accessories for (a)(2) vehicles (pickup trucks), Congress exempted from the tax parts and accessories for "passenger automobiles."

Congress' intent to continue the excise tax imposed on parts and accessories for light-duty pickup trucks was made clear in the committee reports to the 1971 amendments. The reports state that although the 10% excise tax imposed by subsection (a) on light-duty trucks, and parts sold with the trucks, was being repealed, the 8% tax imposed by subsection (b) would continue on parts sold separately. S.Rep. No. 92–437, 92d Cong., 1st Sess. at 81, *reprinted in* 1971 U.S.Code Cong. & Ad.News 1825, 1987. Similar language is found in the House report. H.R.Rep. No. 92–533, 92d Cong., 1st Sess. at 52, *reprinted in* 1971 U.S.Code Cong. & Ad.News 1825, 1866. This language strongly suggests that Congress did not intend to exempt from the 8% excise tax parts and accessories for light-duty pickups sold subsequently to the sale of the truck.

 Finally, the rules of statutory construction support a conclusion that light-duty pickups are not passenger automobiles with respect to the tax exemption for parts and accessories sold subsequently to the sale of the vehicle. The general rule for con-

struing tax statutes is that any doubt in the application of the statute is to be resolved in favor of the taxpayer. However, where the taxpayer attempts to bring itself within a tax exemption, as Luben is attempting to do in this case, doubt is to be resolved in favor of the Government. *Bingler v. Johnson,* 394 U.S. 741, 751–52, 89 S.Ct. 1439, 1445–46, 22 L.Ed.2d 695 (1969); *Herren v. United States,* 317 F.Supp. 1198 (S.D.Tex. 1970), *aff'd,* 443 F.2d 1363 (5th Cir.1971). *See also* Sutherland Stat. Const. § 66.09 (4th ed.). The taxpayer has the burden of proving that the exemption applies to its situation. Luben has failed to prove that light-duty pickup trucks are passenger automobiles for purposes of the tax exemption. It is clear, therefore, that the § 4061(b)(2) exemption does not include parts and accessories for light-duty pickup trucks.

III. *Was there a material issue of fact which should have precluded the District Court from granting the Government's motion for summary judgment?*

Luben's final argument is that summary judgment was not appropriate because the District Court should have held a trial on the issue of whether elongated-cab pickups are "multipurpose" vehicles and therefore exempt as passenger automobiles pursuant to an IRS Revenue Ruling.

The IRS has issued Revenue Rulings stating that vehicles such as the "Scout," the "Bronco," and the "Jeep" are passenger automobiles for purposes of the § 4061(b)(2) tax exemption. The IRS found that these types of vehicles were not contemplated by Congress when it amended (b)(2) to its current form, and that the vehicles are not trucks in a generic sense. The IRS then examined the features of the vehicles to determine whether they should be deemed trucks or passenger automobiles for the purposes of the tax exemption, and found that the vehicles are "hybrid," containing features of trucks and automobiles; the vehicles were "multipurpose." The agency ruled that these "hybrid" vehicles would be treated as passenger automobiles.

Luben's contention is that the District Court should hold a trial to determine if elongated-cab pickups are "multipurpose." Such a determination is unnecessary. Unlike the "hybrid" vehicles, Congress did contemplate and specifically address light-duty pickup trucks, but chose not to include accessories for these pickups sold after the sale of the truck in the tax exemption. Neither the IRS nor the District Court could rule otherwise. Even if the District Court found that elongated-cab pickups are multipurpose vehicles, sales of accessories for the pickups could not be exempt from the excise tax. Therefore, the question of whether an elongated-cab pickup is multipurpose is not material.

The final judgment entered by the District Court on July 30, 1981 is affirmed.

AFFIRMED.