**ALZHEIMER'S INSTITUTE OF AMERICA, Plaintiff,**

v.

**ELI LILLY & COMPANY, et al., Defendants.**

**Case No. 10–cv–00482–EDL**

United States District Court, N.D. California.

Signed June 5, 2015

1250

Ameer Gado, Benjamin Sodey, Bryan Cave LLP, St. Louis, MO, Berrie Rebecca Goldman, Kenneth Lee Marshall, Robert Alan Padway, Bryan Cave LLP, Guy D. Calladine, Joshua Kapnick Bart, Carlson, Calladine & Peterson LLP, San Francisco, CA, for Plaintiff.

Robert Francis McCauley, Finnegan Henderson Farabow Garrett & Dunner, LLP, Deborah E. Fishman, Assad Hussain Rajani, Katie Jeannine Lewis Scott, Kaye Scholer LLP, Palo Alto, CA, Amy E. Purcell, Laura Pollard Masurovsky, Robert D. Bajefsky, Robert Frederic Shaffer, Finnegan, Henderson, Farabow, Garrett and Dunner, LLP, Mark J. Feldstein, Finnegan Henderson Farabow Garrett Dunner,

L.L.P., Washington, DC, Charles Edmund Lipsey, Lawrence Scott Burwell, Finnegan, Henderson, Farabow, Garrett and Dunner, LLP, Reston, VA, Manisha Desai, Eli Lilly and Company, Indianapolis, IN, Nathaniel S. Edwards, Finnegan Henderson Farabow Garrett & Dunner, L.L.P., Cambridge, MA, for Defendants.

## ORDER GRANTING DEFENDANTS' ATTORNEY'S FEES MOTIONS AND DENYING DEFENDANT ELI LILY'S UNDERTAKING MOTION

ELIZABETH D. LAPORTE, United States Magistrate Judge

On April 13, 2015, Defendant Eli Lily & Company ("Defendant Eli Lily") moved for an award of attorney's fees and for an undertaking to secure any award of attorney's fees. On April 21, 2015, Defendant Elan Pharmaceuticals, Inc. ("Defendant Elan") also moved for an award of attorney's fees. For the reasons set forth below, Defendants' attorney's fees motions are GRANTED and Defendant Eli Lily's undertaking motion is DENIED.

## I. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 2, 2010, Plaintiff Alzheimer's Institute of America, Inc. ("Plaintiff" or "AIA") initiated this patent infringement action involving patents related to the "Swedish mutation," one of the known genetic causes of Alzheimer's disease. Plaintiff subsequently filed a related case, *Alzheimer's Institute of America, Inc. v. Avid Radiopharmaceuticals,* 10–cv–6908 ("*Avid*"), in the Eastern District of Pennsylvania. At issue in *Avid* were patent infringement contentions involving two of the four patents that were at issue in the present case. The *Avid* court ordered targeted discovery on AIA's standing and ultimately held a trial on that issue. On December 22, 2011, this Court granted Plaintiff's motion to stay this case pending the outcome of the *Avid* trial, noting that the outcome "is potentially dispositive of this entire action." (Dkt. 296 at 4.)

After an eight-day trial, the *Avid* jury returned a verdict that amounted to a decision that AIA lacked standing to assert the validity of the patents at issue. The *Avid* court subsequently entered judgment in favor of the defendants and denied AIA's motion for judgment as a matter of law. *Alzheimer's Inst. of Am., Inc. v. Avid Radiopharmaceuticals,* 952 F.Supp.2d 740, 743 (E.D.Pa.2013). That decision was summarily affirmed by the Federal Circuit. *Alzheimers Inst. of Am., Inc. v. Avid Radiopharmaceuticals,* 560 Fed.Appx. 996 (Fed.Cir.2014).

On March 8, 2012, after the *Avid* court's entry of judgment, this Court lifted its stay and dismissed this case for lack of standing, finding that collateral estoppel applied to the *Avid* jury's determination. (Dkt. 314 at 2–3.) Subsequently, this Court entered judgment in favor of Defendants. (Dkt. 315.)

On August 20, 2012, this Court entered a stipulation whereby it extended the deadline for Defendants to move for attorney's fees to 14 days after the entry of an order in *Avid* disposing of the motions for attorneys' fees filed by the defendants in that case. (Dkt.324:) On March 30, 2015, the *Avid* court granted the attorney's fees motions, finding that the case is exceptional under 35 U.S.C. § 285, and appointed a special master to determine the amount of attorney's fees to be awarded. The court noted that:

> The jury determined that the plaintiff, Alzheimer's Institute of America, Inc. ("AIA"), was not the owner of the rights to the patent upon which it predicated this infringement action. Instead, it found that the University of South Florida ("USF") had not waived its ownership rights in the Swedish mutation in-

vention. It also found that John Hardy, who was not disclosed on the patent application, was a co-inventor.

The evidence at trial amply showed that Ronald Sexton, AIA's principal, had conspired with John Hardy and Michael Mullan to defraud USF and Imperial College in London of their ownership rights in the invention. They agreed not to list Hardy as a co-inventor on the patent application. Thus, Mullan was listed as the sole inventor on the patent application and assigned the patent rights to AIA. . . .

To avoid any claim of ownership by USF, Mullan arranged to have the sequencing in an off-campus, private laboratory even though USF had provided Mullan and Hardy a new laboratory dedicated to Alzheimer's research. Once they had identified the Swedish mutation, Sexton, Hardy and Mullan sought USF's waiver of any rights in this discovery. They presented a "waiver letter" to USF's vice-president for research. In their successful effort to obtain his signature on the letter, they led him to believe that the work on the Swedish mutation had been substantially completed while Hardy and Mullan were at Imperial College.

In furtherance of their conspiracy to deprive USF and Imperial College of ownership rights in the invention, Sexton, Hardy and Mullan agreed to omit Hardy's name from any publication reporting the discovery of the Swedish mutation. They also omitted him as a co-inventor from the patent application.

(Burwell Decl. Ex. 1 (March 30, 2015 Order in *Avid*) at 2–4.)

## II. DEFENDANTS' ATTORNEY'S FEES MOTIONS

### A. Standard

 Defendants move for awards of attorney's fees pursuant to 35 U.S.C § 285, which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Awarding attorney's fees involves a two-step inquiry: (1) the Court must first determine whether a case is exceptional; and (2) if so, the Court must determine in its discretion whether an award of attorney's fees is justified. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1372–73 (Fed.Cir. 2009). Section "285 commits the determination [of] whether a case is 'exceptional' to the discretion of the district court." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, —— U.S. ——, 134 S.Ct. 1744, 1748, 188 L.Ed.2d 829 (2014).

The Supreme Court has held that an "exceptional case"

is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. As in the comparable context of the Copyright Act, " '[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.' " *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, —— U.S. ——, 134 S.Ct. 1749, 1756, 188 L.Ed.2d 816 (2014). The Court also noted that "Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one. Indeed, patent-infringement litigation has always been

governed by a preponderance of the evidence standard." *Id.* at 1758.

## B. Discussion

 Collateral estoppel or issue preclusion "bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met: '(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.'" *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir.2006) (quoting *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir.2005)). Additionally, for collateral estoppel to apply in patent suits, the party against whom collateral estoppel is asserted must have had "a full and fair chance to litigate the validity of [the] patent" in the prior proceeding. *Blonder–Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 333, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

In *Convergence Corp. v. Videomedia*, 1982 WL 677588, at *2 (N.D.Cal. May 6, 1982) (Orrick, J.), the court addressed the question of "whether the doctrine of collateral estoppel can be asserted by a defendant in a patent suit on the issue of whether a case is exceptional within the meaning of 35 U.S.C. § 285 where that issue has been previously adjudicated in a separate action brought by the same plaintiff-patentee against a different defendant." The court concluded that it does, reasoning that:

> there are substantial reasons militating in favor of the conclusion that the doctrine of collateral estoppel by prior judgment should be available to a defendant on the exceptional case issue. Initially, where the patent's validity has already been decided on the basis of the collateral estoppel effect of a prior judgment, de

novo litigation of the exceptional case issue would plunge the trial court anew into many of the same complex issues which had already been adjudicated in the validity phase of the earlier infringement action. *Cf. Maurice A. Garbell, Inc. v. Boeing Corp.*, 546 F.2d 297, 300, 192 U.S.P.Q. 481, 483 (9th Cir.1976) (undisclosed knowledge of prior art relevant to both validity and exceptional case issues). Such a course of action would generate duplicative costs in terms of time and financial resources for both the courts and the parties. Likewise, relitigation of the exceptional case issue without good cause would give plaintiffs more than one bite at a "full and fair opportunity" for judicial resolution of that issue. The parties would be gambling that different courts would arrive at divergent resolutions of that question. The most persuasive reason, however, springs out of the Supreme Court's recognition of the leverage that a patent plaintiff gains for inducing nuisance settlements and licensing agreements simply by filing, or threatening to file, an infringement action. The availability of the doctrine of collateral estoppel on the validity issue alone does little to relieve defendants faced with unmeritorious actions of the financial burden of going forward on the validity claims, nor does it relieve them of the additional cost burden of establishing the right to recover costs in exceptional cases. Malicious plaintiffs could exercise leverage by filing multiple infringement actions and forcing a defense when they know that each defendant must still incur extensive litigation costs even to attempt to prevail on the exceptional case issue and to recover their initial outlays. The application of the doctrine of collateral estoppel by prior judgment to the exceptional case issue provides a salubrious corollary to the holding in *Blonder–*

*Tongue* for effectuating the policies expressed in that decision.

*Convergence,* 1982 WL 677588 at *3–4; *see also Med. Designs, Inc. v. Donjoy, Inc.,* 812 F.Supp. 1080, 1082 (S.D.Cal.1992) (citing *Convergence Corp.* approvingly for this proposition); *Scripps Clinic & Res. Found. v. Baxter Travenol Labs., Inc.,* 729 F.Supp. 1473, 1474–78 (D.Del.1990) (same); *Nilssen v. Gen. Elec. Co.,* 2008 WL 4921354, at *3–5 (N.D.Ill. Nov. 12, 2008) (same).

Here, the *Avid* court already held that a related action "is an exceptional case," finding that:

> [o]n both factual and legal grounds, this action was objectively unreasonable. The deception, the planning, the execution of the scheme and the motivation of AIA [and others] ... were hardly common or ordinary. Indeed, their conduct was rare and beyond common decency. They were motivated by ego and greed. Bringing this action was nothing more than a perpetuation of the conspiracy.... Such conduct should not be rewarded and without consequences."

(Burwell Decl. Ex. 1 (March 30, 2015 Order in *Avid*) at 1, 5–6.) However, the court noted that there are "equities on both sides" as "the defendants should not be rewarded for acts of infringement that may have occurred." (*Id.* at 6.) The court thus granted the motions for attorney's fees but indicated that it "will scrutinize the bills closely in light of [these] equitable concerns." (*Id.*)

The Parties do not dispute that the issues in this case are identical to the issues already decided in *Avid.* However, Plaintiff argues that the *Avid* court's ruling is insufficiently final for collateral estoppel to apply and that Plaintiff did not have a full and fair opportunity to litigate before the *Avid* court. Neither argument is persuasive.

### 1. The *Avid* court's order constitutes a 'final judgment' for purposes of collateral estoppel

 "A 'final judgment' for purposes of collateral estoppel can be any prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to be accorded conclusive effect." *Luben Indus., Inc. v. United States,* 707 F.2d 1037, 1040 (9th Cir.1983) (citing *Miller Brewing Co. v. Jos. Schlitz Brewing Co.,* 605 F.2d 990, 996 (7th Cir.1979) and Restatement (Second) of Judgments § 13 (1982)). The *Luben* court noted that

> the Restatement discusses factors that are relevant to the determination of "firmness": [P]reclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, *that the decision was subject to appeal or was in fact reviewed on appeal,* are factors supporting the conclusion that the decision is final for purpose of preclusion.

*Id.* (emphasis in original). However, "[t]o be 'final' for [issue preclusion] purposes, a decision need not possess 'finality' in the sense of 28 U.S.C. § 1291," which establishes the jurisdiction of the courts of appeals over final decisions of the district courts. *Syverson v. IBM,* 472 F.3d 1072, 1079 (9th Cir.2007) (quoting *Luben,* 707 F.2d at 1040). Rather, "the proper query ... is whether the court's decision *on the issue as to which preclusion is sought* is final." *Id.* (emphasis in original) (citing *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir.1961) (Friendly, J.)). Indeed, "[i]ssue preclusion [has been applied to] matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief." *Id.* (citation omitted).

Here, the *Avid* court found, in a reasoned opinion, that the case is "exceptional" and granted the defendants' motions for attorney's fees pursuant to 35 U.S.C § 285. (Burwell Decl. Ex. 1 at 1.) In two separate orders entered immediately thereafter, the *Avid* court ordered "that the amount of reasonable attorney's fees incurred by the defendant[s] in litigating this action shall be determined after submission of the Special Master's report." (*Avid* Dkts. 399, 400.) Because the only issue left unresolved is the amount of reasonable attorney's fees that the defendants incurred, the *Avid* court's determinations that the case is exceptional under § 285 and that fees are warranted are sufficiently firm to be accorded conclusive affect. *See Syverson*, 472 F.3d at 1079.

*Falana v. Kent State University*, 669 F.3d 1349, 1360 (Fed.Cir.2012), cited by Plaintiff, is not to the contrary. *Falana* did not involve collateral estoppel. Rather, that case adjudicated the question of when an award of attorney's fees pursuant to § 285 is sufficiently final for the purposes of appeal. *Id.* As both *Syverson* and *Luben* clarify, the finality requirement for collateral estoppel is *lower* than the level of finality required for appeal. *Syverson*, 472 F.3d at 1079 ("[t]o be 'final' for [issue preclusion] purposes, a decision need not possess 'finality' in the sense of 28 U.S.C. § 1291" (quoting *Luben*, 707 F.2d at 1040)); *see also Lummus Co.*, 297 F.2d at 89 (Friendly, J.) (" 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."). Additionally, that Plaintiff might appeal the *Avid* court's decision does not affect whether collateral estoppel applies. *See Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 883 (9th Cir.2007) ("the benefits of giving a judgment preclusive effect pending appeal outweigh any risks of a later reversal of that judgment"); *Cygnus*

*Telecommunications Tech., LLC v. Am. Int'l Telephonics, LLC,* 569 F.Supp.2d 1035, 1038 (N.D.Cal.2008) (Whyte, J.) ("the pendency of an appeal does not prevent this Court from applying collateral estoppel"); *Convergence Corp. v. Videomedia,* 539 F.Supp. 760, 762 (N.D.Cal.1981) ("It is a well-established general rule ... that the pendency of an appeal does not suspend the operation of an otherwise final judgment as ... collateral estoppel.")

## 2. Plaintiff had a full and fair opportunity to litigate before the *Avid* court

Plaintiff argues that it did not have a full and fair opportunity to litigate before the *Avid* court because: (1) evidence was improperly excluded by the *Avid* court; and (2) the jury did not make a finding that Plaintiff had intentionally misled the Patent and Trademark Office ("PTO") or the University of South Florida ("USF"). However, Plaintiff raised the issue of improperly excluded evidence on appeal to the Federal Circuit; Plaintiff's appeal was denied. *Alzheimers Inst. of Am., Inc. v. Avid Radiopharmaceuticals,* 560 Fed. Appx. 996 (Fed.Cir.2014). Furthermore, while the *Avid* jury may not have found that Plaintiff intentionally misled the PTO and USF, Plaintiff had a full and opportunity to argue whether or not this case is "exceptional" before the judge in *Avid.* Plaintiff cites no authority suggesting that it is improper for a judge to make these types of determinations. *See Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1460 (Fed.Cir.1998) ("The district court must determine whether a case is exceptional"); *see also Door–Master Corp. v. Yorktowne, Inc.,* 256 F.3d 1308, 1314 (Fed.Cir.2001) ("[T]he district court may reweigh evidence in deciding whether the case is exceptional so long as the court's findings do not conflict with the jury's findings."). Here, there is no suggestion that the *Avid*

court's order conflicts with the jury's findings.

\* \* \* \* \*

According, collateral estoppel applies to the *Avid* court's determinations that the case is exceptional under 35 U.S.C. § 285 and that attorney's fees are justified and the Court GRANTS Defendants' attorney's fees motions. However, the Court is unable to determine the amount of reasonable attorney's fees to award from the Parties' submissions. Defendants are therefore ORDERED to file motions outlining the amount and reasonableness of the fees that they are requesting.

### III. DEFENDANT ELI LILY'S UNDERTAKING MOTION

█ Section 1030 of the California Code of Civil Procedure provides that "[w]hen the plaintiff in an action or special proceeding resides out of the state, or is a foreign corporation, the defendant may at any time apply to the court by noticed motion for an order requiring the plaintiff to file an undertaking to secure an award of costs and attorney's fees which may be awarded in the action or special proceeding.... If the court, after hearing, determines that the grounds for the motion have been established, the court shall order that the plaintiff file the undertaking in an amount specified in the court's order as security for costs and attorney's fees." Cal.Civ.Proc.Code § 1030(a), (c). However, because this is a federal question case, application of this rule is discretionary. *See Pittman ex rel. L.P. v. Avish P'ship,* 525 Fed.Appx. 591, 592–93 (9th Cir.2013) (district court did not abuse its discretion in requiring the plaintiff to post a bond in a federal question case); *Kourtis v. Cameron,* 358 Fed.Appx. 863, 866 (9th Cir.2009) (same); *AF Holdings LLC v. Trinh,* 2012 U.S. Dist. LEXIS 161394, \*1 (N.D.Cal. Nov. 9, 2012) (Breyer, J.) (noting that "[a]lthough state provisions regarding security for costs or expenses are inapplicable in federal question cases, courts may apply state practice as a discretionary matter when not inconsistent with federal legislation" and applying § 1030); 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Prod.* § 2671 (2014) ("When suit is brought under a federal statute, state provisions requiring security for costs or expenses clearly are inapplicable. In these cases the district court's own rules or state practice may be applied as a discretionary matter when not inconsistent with the federal legislation...").

█ In this case, Defendant Eli Lily moves for an undertaking, arguing that Plaintiff is a foreign corporation and that Defendants are likely to be awarded attorney's fees. However, at this late stage in the litigation, there appears to be little point in the court exercising its discretion to order an undertaking. Indeed, the *Avid* court denied similar undertaking motions. (*See* Supp. Opp. Exs. 1–2.) Furthermore, the cases on which Defendant Eli Lily relies are distinguishable and none of them awarded attorney's fees at the post-judgment stage. In *Gabriel Technologies Corp. v. Qualcomm Inc.,* 2010 WL 3718848, at \*2 (S.D.Cal. Sept. 20, 2010), at issue was "over $1 billion in damages." The Court granted the defendants' motion for an undertaking, which was brought after the plaintiffs filed a fourth amended complaint and where the "[d]efendants [had] already expended over $1 million defending [the] action, and expect[ed] defense costs to exceed $5 million in attorneys' fees." *Id.* at \*10. Here, by contrast, the complaint has already been dismissed with prejudice. Additionally, both *Trinh,* and *AF Holdings LLC v. Navasca,* 2013 WL 450383 (N.D.Cal. Feb. 5, 2013) (Chen, J.), arose under unique circumstances involving a series of lawsuits brought by AF

Holdings LLC and the Prenda Law firm that involved misconduct on the part of both entities that is unlike Plaintiff's conduct here. *See Ingenuity 13 LLC v. John Doe,* 2013 WL 1898633, at *1 (C.D.Cal. May 6, 2013). Finally, *GeoTag, Inc. v. Zoosk, Inc.,* 2014 WL 793526, at *4 (N.D.Cal. Feb. 26, 2014) (Chen, J.), and *IPVX Patent Holdings, Inc. v. Voxernet, LLC,* 2014 WL 2772297, at *3 (N.D. Cal. June 18, 2014) (Lloyd, J.), both denied motions for an undertaking.

## IV. CONCLUSION

Defendants' attorney's fees motions are GRANTED. Defendants are ORDERED to file motions outlining the amount and reasonableness of the fees that they are requesting within twenty-one days of this order. Plaintiff's oppositions, if any, shall be filed no later than fourteen days thereafter. Defendants' replies, if any, shall be filed no later than seven days after Plaintiff's oppositions are filed. Additionally, the Parties are ORDERED to promptly file a joint letter attaching the *Avid* special master's report once it is available. Defendant Eli Lily's undertaking motion is DENIED.

**IT IS SO ORDERED.**